# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3808

_____

Nicholas Lewis, on Behalf of Himself and All Others Similarly Situated

*Plaintiff - Appellant*

v.

Scottrade, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 21, 2017
Filed: January 9, 2018

_____

Before LOKEN, ARNOLD, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Nicholas Lewis filed this putative class action against Scottrade, Inc., a securities brokerage firm, alleging violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 et seq., breach of a common law fiduciary duty, and unjust enrichment. After Lewis filed the action in the Southern District of California, it was transferred to the Eastern District of Missouri, where Scottrade's principal executive offices are located. The complaint alleges that Scottrade routinely routes

customer limit orders for the purchase and sale of securities to trading venues that pay "rebates" to sending brokers, violating Scottrade's "duty of best execution" in buying and selling securities on behalf of its customers. The district court[1] dismissed the complaint, concluding that Lewis's claims are precluded by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(1). Lewis appeals. Reviewing the dismissal for failure to state a claim de novo, we affirm. Siepel v. Bank of Am., N.A., 526 F.3d 1122, 1124 (8th Cir. 2008).

## I. Background

Scottrade provides its customers online trading services, investment services, and market research tools. Its customers place orders to buy and sell individual securities. Scottrade executes the orders itself or through trading venues that include major stock exchanges, hedge funds, banks, electronic communication networks, and third-party market makers. Lewis, a Scottrade customer since 2012, has placed non-directed standing limit orders through Scottrade. In a "non-directed" order, the customer directs Scottrade to execute the order but does not specify the trading venue Scottrade should select. A "limit" order is an order to buy or sell a specific number of shares of a security at a specific or better price.

The complaint alleges that the duty of best execution requires Scottrade to diligently choose the best trading venue for its clients, considering factors such as likelihood and speed of trade execution, and opportunities for price improvement. While Scottrade need not make "trade by trade determinations," it must adhere to this duty in the aggregate and may not put its interests ahead of its customers. Lewis alleges that Scottrade violated the duty of best execution in 2013 and 2014 by directing nearly all customer non-directed standing limit orders to trading venues that

---

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

offered the largest rebates to Scottrade, and by not passing these payments on to its customers. The complaint cites academic research allegedly demonstrating that limit order "routing decisions based primarily on rebates/fees appear to be inconsistent with best execution."

## II. Discussion

"The magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 78 (2006). To further that interest, Congress enacted SLUSA, which modified the Securities Act of 1933 and the Securities Exchange Act of 1934 to "prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of" the earlier Private Securities Litigation Reform Act ("PSLRA"). Id. at 82 (quotation omitted); see Dudek v. Prudential Secs., Inc., 295 F.3d 875, 877 (8th Cir. 2002).

As codified in the 1934 Act, SLUSA provides that no "covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging -- (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). A "covered class action" is one seeking damages on behalf of more than fifty persons. § 78bb(f)(5)(B). A "covered security" is one "traded nationally and listed on a regulated national exchange." Dabit, 547 U.S. at 83; see § 78bb(f)(5)(E).[2]

---

[2]Nearly identical provisions were added to the 1933 Act. See 15 U.S.C. §§ 77p(b), 77p(f)(2)(A), 77r(b)(1).

In this case, it is undisputed that Lewis filed a "covered class action" and that Scottrade receives and executes on behalf of its customers orders for the purchase and sale of "covered securities." The issues on appeal are whether Lewis's complaint alleged (1) a "misrepresentation or omission" or a "manipulative or deceptive device or contrivance" that was (2) "in connection with the purchase or sale of a covered security." When interpreting SLUSA, we presume "Congress envisioned a broad construction, so that the most troublesome class actions [will] be subject to the PSLRA's procedural reforms." Siepel, 526 F.3d at 1127 (quotation omitted). We "look at the substance of the allegations, based on a fair reading," because SLUSA preclusion "is based on the conduct alleged, not the words used to describe the conduct." Kutten v. Bank of Am., N.A., 530 F.3d 669, 670-71 (8th Cir. 2008). Like the parties and the district court, we will begin with the second issue.

## A. The "In Connection With" Requirement

Section 10(b) of the 1934 Act provides that it is unlawful to employ any manipulative or deceptive device or contrivance "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). The Supreme Court has long construed that provision "not technically and restrictively, but flexibly to effectuate its remedial purposes." S.E.C. v. Zandford, 535 U.S. 813, 819 (2002) (quotation omitted). In Zandford, the Court reiterated that in "a fraudulent scheme in which the securities transactions and breaches of fiduciary duty coincide" -- for example, where "each sale was made to further [the] fraudulent scheme" -- the breaches were "in connection with securities sales within the meaning of § 10(b)." Id. at 820, 825. In Dabit, the Court applied that same broad interpretation to identical "in connection with" language Congress used in SLUSA. 547 U.S. at 85-86. "Under our precedents," the Court explained, "it is enough that the fraud alleged 'coincide' with a securities transaction -- whether by the plaintiff or by someone else." Id. at 85.

Applying these precedents, we think it obvious that the misconduct alleged by Lewis was "in connection with" the purchase and sale of covered securities. Lewis argues that "SLUSA does not apply to misconduct that induces someone to select one brokerage firm over another." But Scottrade's alleged failure to provide best execution was material to every trade in covered securities that customer Lewis chose to have Scottrade execute. The alleged misconduct -- not disclosing that it would breach the duty of best execution -- produced ill-gotten revenue for Scottrade each time it executed an order to buy or sell covered securities for its duped customer. We agree with the Seventh Circuit that it is "frivolous, given Dabit," to argue that breach of the best execution duty is not in connection with the purchase or sale of securities. Kurz v. Fidelity Mgmt. & Research Co., 556 F.3d 639, 641 (7th Cir. 2009).

But wait, Lewis argues. The Supreme Court in Dabit only "indirectly discussed 'in connection with' under SLUSA" (a ridiculous assertion). In Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058 (2014), the argument continues, the Supreme Court "broke new ground in illuminating the contours of the 'in connection with' requirement by doing away with the amorphous 'coincide' standard." We disagree. In Chadbourne, plaintiffs were investors who bought uncovered securities from a Ponzi scheme ringleader. They alleged that defendants helped perpetrate the fraud by falsely claiming the uncovered securities were backed by covered securities. Id. at 1062, 1065. The Court held that transactions in uncovered securities are not in connection with the purchase of a covered security because, to be precluded by SLUSA, an alleged fraudulent misrepresentation or omission must be "material to a decision by one or more individuals (other than the fraudster) to buy or sell a covered security." Id. at 1066 (quotation omitted). Here, of course, Scottrade's alleged misconduct induced customers to place limit orders for covered securities with Scottrade.

The Court in Chadbourne, after quoting the "coincide" standard from Dabit, expressly stated, "We do not here modify Dabit." Id. The Court further added that

"the *only* issuers, investment advisers, or accountants that today's decision will continue to subject to state-law liability are those who do not sell or participate in selling securities traded on U.S. national exchanges." Id. at 1068 (emphasis in original). Thus, Chadbourne does not affect our conclusion that fraud or deception in trading that violates a broker's duty of best execution is misconduct "in connection with" the purchase and sale of covered securities to which SLUSA applies.

## B. The "Misrepresentations or Omissions" Requirement

Lewis argues that his suit is not precluded by SLUSA because his claims are not based upon allegations of fraud or material misrepresentations or omissions, nor did he allege that Scottrade failed to disclose anything. However, what is specifically alleged is not dispositive. See Kutten, 530 F.3d at 671. SLUSA applies if the gravamen of a state law claim "involves an untrue statement or substantive omission of a material fact in connection with the purchase or sale of a covered security." Dudek, 295 F.3d at 879. Lewis's complaint alleges that Scottrade "directs large blocks of its clients' trade orders to . . . pre-determined trading venues where Scottrade will maximize kickback revenue." Lewis alleges that this practice breached Scottrade's fiduciary duty of best execution by systematically derogating its clients' interests and enhancing its own profits in a way that was "immoral, unethical, oppressive, and unscrupulous."

Missouri courts have ruled that violations of common law fiduciary obligations constitute "constructive fraud," Klemme v. Best, 941 S.W.2d 493, 495 (Mo. banc. 1997); fiduciary duty claims "sound[] in fraud or deceit," Henry v. Farmers Ins. Co., Inc., 444 S.W.3d 471, 481 (Mo. App. 2014). Of course, not all breaches of fiduciary duty necessarily fall within SLUSA. See Zandford, 535 U.S. at 825 n.4 ("[I]f the broker told his client he was stealing the client's assets, that breach of fiduciary duty might be in connection with a sale of securities, but it would not involve a deceptive device or fraud."). However, the core of Lewis's complaint is that Scottrade did not

-6-

disclose its practice of not obtaining best execution, permitting it to acquire and retain trading venue rebates contrary to its customers' interests.

Fairly read, Lewis's complaint alleges that Scottrade failed to disclose that it was not providing best execution for its customers. The SEC has declared the federal interest in curtailing such practices when they affect the market for covered securities:

> Failure to satisfy the duty of best execution may constitute a violation of Section 15(c)(1)(A) of the Exchange Act, which makes it unlawful for any broker or dealer to "effect any transaction in . . . any security by means of any manipulative, deceptive, or other fraudulent device or contrivance."

In re: Morgan Stanley & Co., Inc., Exchange Act Release No. 55726, 2007 WL 1364323, at *8 (May 9, 2007); see Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 135 F.3d 266, 270 (3d Cir. 1998) (en banc). As the Seventh Circuit explained in applying SLUSA to state law class action claims that did not purport to be based on false statements or omissions but were in fact dependent on non-disclosures:

> A fiduciary that makes a securities trade without disclosing a conflict of interest violates federal securities law. . . . Likewise a broker-dealer that fails to achieve best execution for a customer by arranging a trade whose terms favor the dealer rather than the client has a securities problem, not just a state-law contract or fiduciary-duty problem.

Holtz v. JPMorgan Chase Bank, N.A., 846 F.3d 928, 932 (7th Cir. 2017). Even if Lewis did not allege a false misrepresentation or omission, his allegations fairly read allege that Scottrade "employed [a] manipulative or deceptive device or contrivance." § 78bb(f)(1)(B); see Dudek, 295 F.3d at 880.

We conclude that the allegations in Lewis's state law class action complaint, fairly read, allege material misrepresentations or omissions, or the use of a manipulative or deceptive device or contrivance, in connection with the purchase and sale of covered securities. Accordingly, Lewis's claims are precluded by SLUSA.[3]

The judgment of the district court is affirmed.

_____

[3]Because we conclude that SLUSA precludes Lewis's claims, we need not consider Scottrade's additional argument that Lewis's claims are preempted because they conflict with extensive federal regulation of best execution practices.